IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EISENMANN CORPORATION, ) | |
| ) | |
| Plaintiff and Counter-Defendant, ) | |
| ) | No. 05 C 2400 |
| v. ) | |
| ) | Judge Mark Filip |
| PLASTECH ENGINEERED PRODUCTS, ) | |
| INC., a Michigan Corporation and LDM ) | |
| TECHNOLOGIES, INC., a Michigan ) | |
| Corporation, ) | |
| ) | |
| Defendants and Counter-Plaintiffs. ) | |

## MEMORANDUM OPINION AND ORDER

This is an inter-corporate dispute concerning equipment for and work done on a paint system at a plant in Ohio. (*See, e.g.*, D.E. 23 ¶ 7.) Before the Court are two separate motions of Eisenmann Corporation ("Eisenmann"): a Motion for Leave to File a Second Amended Complaint (D.E. 35)[1] and a Motion for Leave to File Affirmative Defenses to the Counterclaim of Plastech Engineered Products, Inc. ("Plastech") and LDM Technologies, Inc. ("LDM"). (D.E. 33.) In addition, Eisenmann seeks leave of Court to use its July 21, 2005 Answer to the Counterclaim to stand as its Answer to the November 2, 2005 Counterclaim. (*Id.*) Plastech and LDM oppose both motions, although they do not oppose re-use of the previously filed Answer to their Counterclaim. (D.E. 38; D.E. 39.) For the reasons stated below, the Court denies Eisenmann's motion for leave to file a Second Amended Complaint and grants in part and denies in part Eisenmann's motion for leave to file various affirmative defenses to the Counterclaim.

---

[1] "D.E." refers to the docket entry of the cited document, followed by the appropriate page or paragraph number.

The Court further grants leave for Eisenmann to use its July 21, 2005 Answer to the Counterclaim to stand as its Answer to the November 2, 2005 Counterclaim.

RELEVANT FACTS

As previously stated, this is an inter-corporate dispute, and as often happens in such cases, there are various claims going back and forth between the parties. Eisenmann initiated the action on April 22, 2005 and asserted four counts: separate breach of contract counts against Plastech and LDM (Counts I and II, respectively), a promissory estoppel count against Plastech (Count III), and a defamation count against both entities (Count IV). (D.E. 1.) In its breach of contract claims, Eisenmann alleged that the parties had entered into a contract whereby Eisenmann agreed to sell and LDM agreed to buy certain equipment and services related to an enhancement of certain paint systems (the "Enhancement Project") at LDM's Byesville, Ohio plant. (D.E. 1 at 2.) Eisenmann claimed that it was not paid for all of the work it performed in conjunction with the Enhancement Project. (*Id.* at 4.) Particularly, Eisenmann claimed that LDM and Plastech refused to pay various costs allegedly incurred when Eisenmann was forced to work outside its normal hours and for longer periods due to reduced access to the plant and LDM and Plastech's incorrect measurements and specifications. (*Id.* at 6, 7.)

On June 29, 2005, the Court held the first status conference in the case. (D.E. 14.) At that time, the Court set a discovery cut-off of December 1, 2005. (*Id.*)

On July 1, 2005, LDM and Plastech responded to the complaint pursuant to an agreed motion for extension of time. (D.E. 10, D.E. 15.) LDM and Plastech responded with an answer to Eisenmann's complaint and with their own breach of contract counterclaim related to the Enhancement Project. (D.E. 15.) In addition, LDM and

Plastech timely asserted various affirmative defenses, including allegations that: (1) any alleged damages were caused by a third-party; (2) Eisenmann failed to mitigate damages; (3) Eisenmann's claims are barred by laches; (4) Eisenmann itself caused any alleged damages; (5) Eisenmann's claims are barred by the statute of frauds; (6) alleged damages were caused by an independent intervening cause; (7) LDM and Plastech are entitled to set-off; (8) Eisenmann's claims are barred by the statute of limitations. (D.E. 15 at 13-14.) Eisenmann responded to the answer and counterclaim, but failed to assert any affirmative defenses of its own. (D.E. 18)

Subsequently, on October 14, 2005, Eisenmann filed a motion for leave to file an amended complaint, asserting a fifth claim for interference with prospective advantage. (D.E. 20.) The Court granted Eisenmann's motion to file an amended complaint, and also extended the discovery cut-off until February 1, 2006. (D.E. 22; D.E. 23.) LDM and Plastech answered and counterclaimed again on November 2, 2005. (D.E. 25.)

The Court held subsequent status hearings on November 14, 2005, December 15, 2005, and January 30, 2006. (D.E. 27, D.E. 29, D.E. 30.) At the last of these status hearings, on January 30, 2006—or two days before the scheduled and once-extended discovery cut-off—the Court agreed to extend the deadline for non-party depositions until March 16, 2006. (D.E. 30; D.E. 64 (transcript of hearing).)

On March 9, 2006, or long after the discovery cut-off for party discovery, and one week before the (twice-extended) discovery deadline as to non-party discovery, Eisenmann filed: (1) a motion for leave to file a second amended complaint (D.E. 35); (2) a motion for leave to file affirmative defenses to the counterclaim of LDM and Plastech (D.E. 33); and a motion to compel various discovery (D.E. 31). These motions were

3

noticed for March 15, 2006. (D.E. 32, 34, 36.) The motion to compel discovery has been resolved by Magistrate Judge Denlow, and the Court presently addresses the motion to file another amended complaint and the motion to file belated affirmative defenses.

In the motion to file another amended complaint, Eisenmann proposed to add new claims for contract implied in fact (proposed Count VI) and quantum meruit (proposed Count VII). (D.E. 35.) In support of the proposed claims, Eisenmann asserted that "LDM and Plastech authorized Eisenmann's subcontractor Carden and/or its subcontractor Mid Ohio to modify the original scope of Eisenmann's work on the Enhancement Project, including, but not limited to, changes to the oven, conveyor system, duct work and related labor, materials, equipment and engineering services (hereinafter the 'oven change order')" (D.E. 35, Ex. 1 ¶¶ 63, 70), and that "Representative [sic] of LDM and Plastech authorized Eisenmann to proceed with the oven change order once Eisenmann learned of it. . . ." (*Id.* ¶¶ 65, 72.)

In the motion to belatedly file affirmative defenses, Eisenmann seeks leave to assert various affirmative defenses to the counterclaim of LDM and Plastech, including that: (1) any purported damages are the result of third parties; (2) LDM and Plastech failed to mitigate damages; (3) the counterclaim is barred by the doctrine of laches; (4) any purported damages were proximately caused by LDM and Plastech; (5) any purported damages were caused by an "independent intervening cost (sic)"[2]; (6) set off applies; (7) the statute of limitations bars the claim; (8) the doctrine of "betterment" bars the claimed damages; (9) estoppel, based on the conduct of LDM and Plastech, applies. (D.E. 33.)

---

[2] The Court assumes that Eisenmann is actually seeking leave of Court to plead an "independent intervening cause."

LDM and Plastech oppose both motions. (D.E. 38; D.E. 39.) Eisenmann also requests leave of Court to use its July 21, 2005 Answer to the Counterclaim to stand as its Answer to the November 2, 2005 Counterclaim. That request is unopposed.

I. Eisenmann's Motion for Leave to File a Second Amended Complaint Is Respectfully Denied

A. Standard of Review for Motions To Amend

Although leave to amend shall be "freely given" when "justice so requires" Fed.R.Civ.P. 15(a), "leave is inappropriate where there is," *inter alia*, "undue delay," "repeated failure to cure deficiencies by amendments previously allowed" or "undue prejudice to the opposing party by virtue of allowance of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991) (citing *Foman v. Davis*, 371 U.S. 178, 183 (1962)). It is within the "sound discretion of the trial court whether to grant or deny a motion to amend." *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992) (citing *Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990)); *accord, e.g., Johnson v. Methodist Med'l Ctr. of Illinois*, 10 F.3d 1300, 1303 (7th Cir. 1993) (discussing level of review; citation omitted). Here, leave to further amend the First Amended Complaint is unwarranted because, in the Court's view, there has been undue delay that would subject LDM and Plastech to undue prejudice if amendment were allowed, and Eisenmann failed to add proposed Counts VI and VII, as it reasonably should have, in prior amendments to the pleadings that were allowed before discovery had closed.

B. Threshold Waiver Issues

There is a serious argument that Eisenmann has waived its ability to advance virtually all of the arguments it offers—for the first time in its reply brief—in support of

its motion to file another amended complaint. Eisenmann's motion to file a second amended complaint is charitably described as terse, effectively covering just a page and a half of text. (*See* D.E. 35 at 1-2.) It neglects to address that party discovery had closed, or that *all* discovery effectively had closed, at the time of its filing and noticing. Instead, it asserts in conclusory and barebones fashion that "[t]hese amended pleadings will not require additional discovery as they are based on the extensive written and oral discovery already completed in this matter." (*Id.* at 2.) The motion, with all respect, proceeds as if it is an agreed motion, which certainly was not the case, and deals only in fleeting fashion, if at all, with the issues presented by such a belated request.

Precedent makes clear that a party waives an issue when it raises it in barebones fashion. *See, e.g., United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005) (collecting cases and stating that, "[i]n this circuit, unsupported and undeveloped arguments are waived."); *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (similar). Furthermore, precedent establishes that a party cannot advance arguments for the first time in a reply brief, as that is not consistent with a process that will allow the fair and efficient resolution of motions that are, by definition, advanced by a party who fairly can be expected to present its arguments with its initial moving papers. *See, e.g., United States v. Kelley*, 446 F.3d 688, 692-693 (7th Cir. 2006) (stating that arguments raised for first time in reply brief are waived); *United States v. Duran*, 407 F.3d 828, 844 n.7 (7th Cir. 2005) (stating that arguments not raised in opening brief are waived).

The Court need not resolve these issues definitively, although the waiver issues are real and likely provide another, independent basis supporting the rejection of the

motion to file another amended complaint. Even if Eisenmann's arguments in its reply brief are considered without regard to being improperly advanced, the Court still would not exercise its discretion so as to allow the proposed Second Amended Complaint.

C. Undue Delay

Eisenmann filed its motion for leave to file its Second Amended Complaint eleven months after instituting this action, well after the expiration of party discovery, and seven days before the (multiply extended) deadline to complete non-party depositions. The proposed additional claims, contract implied in fact (proposed Count VI) and unjust enrichment (proposed Count VII), are based on alleged facts that should have been within Eisenmann's knowledge both when it filed its Complaint in April 2005 and when it was given leave to file its First Amended Complaint in October 2005. (D.E. 1; D.E. 23.) Given the circumstances here, Eisenmann has unduly delayed in filing these claims, particularly when it had the opportunity to do so in either of its previous pleadings.

Delay, in and of itself, is normally not a justification for denying leave to amend. *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004). However, precedent states that "'the longer the delay, the greater the presumption against granting leave to amend.'" *Perrian*, 958 F.2d at 194 (quoting *Tamari v. Bache & Co., S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988)); *see also Park v. City of Chicago*, 297 F.3d 606, 613 (7th Cir. 2002) (affirming denial of motion to amend and holding that, where the plaintiff "knew or should have known of the City's possible violation," her "six-month wait constituted undue delay"); *Perrian*, 958 F.2d at 195 (affirming denial of motion to amend on grounds that, "even if O'Grady's admittedly tardy written interrogatories first brought

to Perrian's attention the need to depose the medical personnel, Perrian has not explained why he waited from July 14 to September 21, the end of the lengthened discovery period, to ask to depose the medical personnel, and then until November 1 to add them as defendants").

In this case, Eisenmann offers no logical or meaningful explanation for having waited until the close of the (extended) discovery period to raise its proposed new claims of contract implied in fact and unjust enrichment. For example, many of the significant averments underlying the proposed additional counts are based on actions of Eisenmann itself or matters of which it was aware. *See, e.g.*, D.E. 35, Ex. 1 ¶¶ 65, 72 ("Representative [sic] of LDM and Plastech authorized Eisenmann to proceed with the oven change order once Eisenmann learned of it. . . ."). Other averments are based on information known to third-parties, but they are third-parties to which Eisenmann had equal if not better access than LDM or Plastech. *See, e.g., id.* ¶¶ 63, 70 ("LDM and Plastech authorized Eisenmann's subcontractor Carden and/or its subcontractor Mid Ohio to modify the original scope of Eisenmann's work on the Enhancement Project, including, but not limited to, changes to the oven, conveyor system, duct work and related labor, materials, equipment and engineering services (hereinafter the 'oven change order').") There is no legitimate reason given for why these counts were not added in the earlier amendment to the complaint before the close of discovery. Moreover, the explanation Eisenmann does offer—primarily that the new counts are "based on the deposition testimony of defendant's employees[3] regarding the circumstances under which certain paint line work was authorized"—simply confirms

---

[3] The Court understands the reference to "Defendant's employees" to be a reference to the employees of Eisenmann and LDM.

that Eisenmann could and should have brought these claims before discovery effectively had closed. (D.E. 40 (Reply Brief) at 2.)

Further, when the Court asked why it was necessary to bring the motion for leave to file a second amended complaint at law after the close of discovery in this matter, Eisenmann's counsel replied: "[b]ecause it was in discovery that I learned the basis for the pleadings." (March 15, 2006 Tr. at 1.) Although Eisenmann's counsel claimed to have learned of certain information during the two months prior to the filing of the motion (or, put differently, during the last month of party discovery and during the period of the additionally extended time for non-party discovery), Eisenmann certainly was in possession of the other information underlying the counts—and, as LDM and Plastech note, also was well apprised since, at a minimum, the filing of the original answer in July 2005, that LDM and Plastech denied that they "agreed to pay for . . . additional work." (D.E. 35 at 1.) Simply put, Eisenmann's motion (and reply brief) fail to identify with any meaningful specificity what supposedly "new" discovery prompted the post-discovery motion to amend the First Amended Complaint, and it is clear that substantial, relevant foundational information was available to Eisenmann concerning these counts well before the effective cut-off of discovery.

Compounding its problem, Eisenmann offers no other basis for waiting a year after filing its Complaint, until the eve of discovery's close, to raise the proposed new claims. Precedent teaches that where discovery has closed and movant offers no reasonable basis for its delay in moving to amend its pleadings, denial of leave to amend is justified. *See, e.g., Bethany Pharm. Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861-62 (7th Cir. 2001) (upholding denial of leave to amend based, in part, on the fact that party

seeking amendment offered no good explanation for delay and could have brought claim earlier in the litigation); *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (affirming district court's refusal of an amendment to a counterclaim based on undue delay where the facts underlying the claim "did not change and must been known" to the party seeking amendment since their occurrence); *see also Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1225 (7th Cir. 1988) ("Fed.R.Civ.P. 15. . . . is not a license for carelessness or gamesmanship.").

D. Undue Prejudice

In addition, and independently, allowing Eisenmann's proposed Second Amended Complaint after the close of discovery would subject LDM and Plastech to undue prejudice. Precedent teaches that "a party seeking an amendment carries the burden of proof in showing that no prejudice will result to the non-moving party." *King v. Cook*, 26 F.3d 720, 724 (7th Cir. 1994) (citation omitted). Although Fed. R. Civ. P. 15(a) counsels in favor of amendment when justice so requires, "[t]he district courts must consider the harm when deciding whether to grant leave [to amend a complaint]." *Feldman*, 850 F.2d at 1225.

With regard to harm, LDM and Plastech contend that during discovery, they reasonably did not address issues outside the scope of what Eisenmann had previously contended was a binding contract. (D.E. 39 at 1.) LDM and Plastech reasonably assert that they have neither "engaged in discovery concerning the alleged 'confirm[ation]' of the supposed oven change order," nor of the alleged damages arising from the oven change order. (D.E. 39 at 3.)[4] In this regard, it is unclear from Eisenmann's proposed

---

[4] Plastech and LDM correctly assert that although the $1,116,200 sought as damages in proposed Counts VI and VII is the same as the amount sought for the "extras" described in Counts I-III, it is not clear from Eisenmann's filings whether these

Second Amended Complaint whether the "oven change order" described in proposed Counts VI and VII is one of the "extras" for which Eisenmann has sought payment in the First Amended Complaint's breach of contract claims, or whether all of the prior claimed damages relate to the "oven change order" either. (*Compare* D.E 33, ¶¶ 69, 78 *with* D.E. 23 ¶¶ 35, 41.) Moreover, even if, as Eisenmann claims (without providing any meaningful specificity) that "the project at issue has already been explored in written and oral discovery" (D.E. 40 at 3), "it does not follow that the underlying facts of the defense to the new claim had also already been developed." *Feldman*, 850 F.2d at 1226.

At a minimum, LDM and Plastech credibly contend that if the proposed Second Amended Complaint were allowed, they would need to take additional discovery and therefore discovery would need to be reopened. (As previously stated, Eisenmann simply asserts in generalities that this is not true, which is inadequate.) Precedent is clear that such additional discovery and delay can constitute undue prejudice sufficient to warrant denial of a proposed amendment. *See, e.g., Cont'l Bank*, 10 F.3d at 1298 ("If the amendment were allowed, the bank would have been put to additional discovery, and thus prejudiced. We conclude that the district court did not abuse its discretion in refusing the amendment because of undue delay."); *Hindo v. Univ. of Health Sciences/The Chicago Medical School*, 65 F.3d 608, 615 (7th Cir. 1995) ("A denial is particularly warranted in instances in which the plaintiff has failed to provide an explanation as to why the amendment did not take place sooner, and where the delay in granting the motion to amend would cause delay and burden the parties"); *Foodcomm Int'l v. Barry*, No. 02 C 7268, 2003 WL 23144860, *3 (N.D. Ill. Dec. 22, 2003) (denying

---

damages are the same in substance or relate to other issues or theories of recovery. (D.E. 39 at 3 n.3.)

11

motion to amend complaint where plaintiff sought to add six defendants approximately four months before discovery was scheduled to close).[5]

   E.   Failure to Cure Deficiencies by Amendments Previously Allowed

In considering a motion for leave to amend, courts also consider whether a plaintiff has had reasonable opportunity to amend its complaint. *Foman*, 371 U.S. at 182 (noting that one factor to consider is "repeated failure to cure deficiencies by amendments previously allowed"). Eisenmann has already filed two complaints in this action. (D.E. 1; D.E. 23.) While this fact, standing alone, might not merit denial of the motion, it does weigh in favor of denial. *See Villa*, 924 F.2d at 632 (upholding denial of leave to amend where, among other reasons, movant "already had several opportunities to amend his complaint by the time he filed his motion to file a third amended complaint" and no new facts or changes in the law warranted amendment); *Glatt v. Chicago Park District*, 87 F.3d 190, 194 (7th Cir. 1996) (review of motion to amend should properly consider "whether the claim could have been added earlier").

---

[5] On September 5, 2006, Eisenmann filed a "Supplemental Brief" in support of its motions to file a second amended complaint and belated affirmative defenses. (D.E. 60.) Eisenmann did not move for leave of Court to file this supplementary briefing and the Court does not, as a matter of course, accept such filings. For this reason alone, the Court might respectfully, but justifiably, reject Eisenmann's supplemental filing and refuse to consider it. However, even considering Eisenmann's arguments therein — that LDM and Plastech have not been prejudiced by Eisenmann's delay in seeking leave to file the proposed second amended complaint because they have now had a complete opportunity to examine Eisenmann's project manager with regard to proposed Counts VI and VII (D.E. 60 at 1-2)—the analysis rendered herein would remain the same. The opportunity to examine one witness, whom LDM and Plastech claim did not even possess knowledge of what the "oven change order" meant (D.E. 62 at 2-3), does not lead the Court to conclude that Eisenmann has carried its burden to prove that "no prejudice will result to the non-moving party," *King v. Cook*, 26 F.3d 720, 724 (7th Cir. 1994), or even that such prejudice would be less than extreme in light of the numerous depositions completed prior to Eisenmann's filing of its motion to amend. (D.E. 39 at 1.)

Eisenmann has offered no meritorious reason for its undue delay in filing claims it should have known about long ago; LDM and Plastech would suffer undue prejudice and the litigation would be delayed if amendment were allowed subsequent to the close of discovery; and Eisenmann failed to add the proposed new claims in an amendment previously allowed. For these and the aforementioned reasons, the Court respectfully denies Eisenmann's Motion for Leave to File the Second Amended Complaint. (D.E. 35.)

II. Eisenmann's Motion for Leave to File Belated Affirmative Defenses to the Counterclaim Is Granted in Part and Denied in Part.

Eisenmann also moves the Court for: (1) leave to use its previously-filed Answer to the Counterclaim of LDM and Plastech (D.E. 18) as its Answer to the counterclaim asserted in LDM and Plastech's Answer to Amended Complaint and Counterclaim (D.E. 25); and for (2) leave to plead ten new affirmative defenses to the counterclaim, as listed in substantial detail above. (D.E. 33.) The Court grants leave for Eisenmann to use its July 21, 2005 Answer to the Counterclaim to stand as its Answer to the November 2, 2005 Counterclaim, as this request is unopposed. (*See* D.E. 38 at 1 n.1.) For the reasons discussed below, Eisenmann's Motion for Leave to File Affirmative Defenses to the counterclaims is denied in part and granted in part.

A. Standard of Review

In its answer to a complaint or counterclaim, a party must plead any affirmative defense specifically enumerated by Fed. R. Civ. P. 8(c) and "any other matter constituting an avoidance or affirmative defense." Fed. R. Civ. P. 8(c). The rule is meant to avoid "surprise" and "unfair prejudice" to an opposing party. *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997) (collecting cases). Failing to raise an

13

affirmative defense in the responsive pleading may result in the defense being waived. *Id.* at 968. In some cases, where a defense becomes apparent only through the discovery process, a court might reasonably allow a party to add defenses at a later date. *Id.* at 967. However, precedent teaches that a failure to comply with Rule 8(c) can be fatal unless "the record confirms that . . . [the opposing party] had adequate notice of the defense and was not deprived of the opportunity to respond." *Id.* at 968 (citations omitted). Moreover, the movant as to a belated assertion of an affirmative defense "remains obligated to act in a timely fashion." *Id.* at 967.

    B.    Eisenmann Waived Proposed Affirmative Defenses (1), (4), (5), (6), (9) and (10) By Neither Complying with Fed.R.Civ.P. 8(c) Nor Offering Any Reasonable Explanation For Failing To Doing So

Eisenmann admits that it failed to raise any of its proposed affirmative defenses in its Answer to the Counterclaim. (D.E. 33 at 2.) In fact, Eisenmann failed to file proposed affirmative defenses until after the close of party-discovery and until the virtual close of the (multiply extended) period for non-party discovery. Nonetheless, in its motion, without citing any authority, or even Rule 8 itself, Eisenmann asks this Court to relax the requirements of the rule and grant it leave to assert its proposed affirmative defenses after discovery has effectively closed in this matter. (D.E. 33.)

Eisenmann has offered no reasonable explanation for its delay in seeking leave to file proposed affirmative defenses (1), (4), (5), (6), (9) and (10), and on the record before it, the Court cannot discern one. Therefore, Eisenmann's failure to comply with Rule 8(c) under such circumstances merits a waiver of those defenses. *See, e.g., Castro v. Chicago Housing Authority*, 360 F.3d 721, 735 (7th Cir. 2004) ("We have stated numerous times that if a defendant does not raise defenses at the time of filing an answer,

those defenses are deemed waived") (collecting cases); *Venters*, 123 F.3d 968 ("A [movant] should not be permitted to 'lie behind a log' and ambush [an opposing party] with an unexpected defense") (quoting *Perez v. United States*, 830 F.2d 54, 57 (5th Cir. 1987) (remaining internal citation omitted)).

Eisenmann claims that it has not unduly delayed in moving for leave to file its ten proposed affirmative defenses because it was only through discovery and receipt of various documents that it realized their applicability. (D.E. 33 at 2; March 15, 2006 Tr. at 5-6.) Eisenmann also argues that LDM and Plastech produced various documents at the end of discovery that formed the basis of these defenses, and therefore the motion for leave to assert these affirmative defenses was timely. (*Id.*) Eisenmann further claims that the documents at issue: (1) "revealed that . . . [LDM and Plastech] have been aware of various solutions to it [sic] paint line problem for many years but have failed to correct known problems;" (2) "show that . . . [LDM and Plastech] had been consulting outside engineers regarding the paint line before Eisenmann finished the job;" and (3) "show that correction costs include numerous improvements to the paint line system." (D.E. 40 at 4.)

Assuming the recently-produced documents contain the information Eisenmann alleges, and LDM and Plastech do not claim otherwise, it would not have been undue delay for Eisenmann to wait until now to seek leave to add affirmative defenses based on the newly-discovered information. While LDM and Plastech argue that Eisenmann has not stated the exact documents or information that brought the proposed affirmative defenses to light, they never claim that the newly-produced documents do not contain the information Eisenmann alleges. The Court finds Eisenmann's proposed affirmative

defenses (2), (3), (7) and (8) might logically be based on these "newly" discovered facts. (D.E. 33, Ex. 1.) Proposed affirmative defense (2) asserts that LDM and Plastech "failed to mitigate their damages." (D.E. 33, Ex. 1.) Proposed affirmative defense (3) states that the "counterclaim is barred by laches."⁶ *Id.* The Court recognizes that both of these proposed affirmative defenses may be based on recently produced documents allegedly indicating that LDM and Plastech "have been aware of various solutions to it [sic] paint line problem for many years but have failed to correct known problems." (D.E. 40 at 4.) Similarly, Eisenmann alleges that it only recently discovered "when . . . [Plastech and LDM] first learned about how to fix this paint line" (March 15, 2006 Tr. at 5), an allegation that might reasonably have formed the basis for proposed affirmative defense (7), asserting a statute of limitations defense. In addition, if, as Eisenmann alleges, it only recently discovered that "correction costs include numerous improvements to the paint line" (D.E. 40 at 4), Eisenmann may only recently have learned the basis of its proposed affirmative defense (8) relating to "betterment." (D.E. 33, Ex. 1.)

While the information Eisenmann claims to have recently discovered may form the basis for some of the proposed affirmative defenses, Eisenmann has not provided, and the Court cannot discern, any explanation as to how the allegedly newly discovered information forms the basis for belated affirmative defenses: (1)—alleging that damages are the result of third-party actions, (4)—alleging that any damages were caused by the

---

⁶ Under Illinois law, which governs the contract between the Parties attached to the Complaint by its terms (D.E. 1, Ex. A at 39), laches is "the neglect or omission to assert a right which, taken in conjunction with a lapse of time and circumstances causing prejudice to the opposite party, will operate as a bar to a suit." *Bill v. Board of Educ. of Cicero Sch. Dist. 99*, 812 N.E.2d 604, 610 (Ill. App. Ct. 2004) (quoting *Lee v. City of Decatur*, 627 N.E.2d 1256, 1258 (Ill. App. Ct. 1994)). For laches to apply, the party must fail to assert his known right in a timely manner. *Id.*

acts of Plastech and LDM, (5)—alleging that damages were caused by an independent intervening cause, (6)—alleging that Eisenmann is entitled to "set off," (9)—alleging that LDM and Plastech barred Eisenmann from correcting any allegedly defective work, or (10)—purportedly reserving the right for Eisenmann to add *additional* affirmative defenses later. (D.E. 33, Ex. 1; D.E. 40.) Precedent teaches that denial of leave to amend is justified where the movant has offered no basis for its delay. *Hindo*, 65 F.3d at 615 (teaching that "a denial is particularly warranted in instances in which the plaintiff has failed to provide an explanation as to why the amendment did not take place sooner, and where the delay in granting the motion to amend would cause delay and burden the parties") (citation omitted); *accord, e.g., Miles, III v. S.C. Johnson and Son, Inc.*, No. 00 C 3278, 2002 WL 1303131, *3 (N.D. Ill. June 12, 2002) (collecting cases). Rather than indicating that Eisenmann only recently learned the bases for proposed affirmative defenses (1), (4), (5), (6), (9) and (10), the record before the Court actually indicates that Eisenmann should have known the basis for some of these proposed affirmative defenses some time ago. For example, if, as Eisenmann alleges in its proposed Affirmative Defenses, LDM and Plastech have "barr[ed]' it "from completing and/or correcting any alleged defective work" (D.E. 33-2 ¶ 9), this information should have been available to Eisenmann at least as early as its previously-filed Answer to the Counterclaim. Similarly, Eisenmann does not even attempt to explain how it only recently learned the basis for its proposed affirmative defense (10), which attempts to "reserve the right to assert any additional affirmative defenses," nor is this an affirmative defense at all.

Furthermore, as LDM and Plastech note, they would be materially prejudiced by the belated introduction of these putative affirmative defenses. By waiting until the
17

close of party discovery, and well beyond the date presumptively prescribed by Rule 8, Eisenmann deprived the counterclaimants of the opportunity to ask the various party employees deposed in this matter about their knowledge of the affirmative defenses. (*See, e.g.*, D.E. 38 at 5.) On the record before it, the Court cannot discern that LDM or Plastech had "adequate notice" or an ability to fully and fairly address the aforementioned proposed affirmative defenses.[7] *See, e.g., Venters*, 123 F.3d at 968; *see also Williams v. Lampe*, 399 F.3d 867, 871 (7th Cir. 2005) (per curiam) ("The purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it.").

The Court would be within its discretion to deny altogether Eisenmann's belated motion to file amended defenses after the close of party discovery and after the effective close of non-party discovery as well. *See, e.g., Venters*, 123 F.3d at 969 (criticizing

---

[7]  As noted above, without seeking leave of Court, Eisenmann has filed a "Supplemental Brief" in support of its motion to file a second amended complaint and belated affirmative defenses. (D.E. 60.) Even if the Court considers the arguments presented in this "supplemental" filing without regard to the fact that Eisenmann did not obtain leave to file it, the Court is unpersuaded by Eisenmann's argument therein—namely, that LDM and Plastech would not be prejudiced because they have now had a "complete opportunity to examine . . . [Eisenmann's] project manager with regard to . . . those affirmative defenses." (D.E. 60 at 2-3.) The belated opportunity to examine one witness, whom LDM and Plastech explain often did not have material knowledge and/or testified that Eisenmann knew the bases for many of the proposed affirmative defenses by September 2005 (D.E. 62 at 3-4), does not lead the Court to conclude that LDM and Plastech have had sufficient opportunity to fairly explore the bases of the proposed affirmative defenses. (D.E. 39 at 1.) There were multiple party depositions in this case, and a single belated deposition does not obviate the legitimate desire of LDM and Plastech to have full discovery on relevant issues, which here would seem reasonably to entail the redepositions of multiple party witnesses. Put differently, Eisenmann has failed to show any good reason for its belated putative assertion of affirmative defenses (1), (4), (5), (6), (9) and (10), and allowing such a belated assertion of those defenses would cause material and unwarranted prejudice to LDM and Plastech. *See, e.g., Hindo v. Univ. of Health Sciences/The Chicago Medical School*, 65 F.3d 608, 615 (7th Cir. 1995); *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (discussing prejudice).

attempts to invoke affirmative defenses, even potentially meritorious ones, "at the eleventh hour, without excuse and without adequate notice to the [opposing party]"). Nonetheless, because documents produced at the close of discovery by LDM and Plastech at least potentially justify the belated assertion of certain defenses (*i.e.*, proffered defenses (2), (3), (7), and (8)), and because LDM and/or Plastech were in possession of these documents and thus had at least some knowledge of their putative relevance, the Court will exercise its discretion in favor of the Plaintiff-Counterdefendant, Eisenmann, and allow it to belatedly assert these affirmative defenses (*i.e.*, numbers (2), (3), (7), and (8)).

However, because Eisenmann has made no showing that proposed affirmative defenses (1), (4), (5), (6), (9) and (10) are based on any recently discovered information, and because LDM and Plastech would be materially prejudiced by their interjection after the effective close of discovery, the Court concludes that Eisenmann has waived them.[8] As a result, the motion to file belated affirmative defenses is granted in part and denied in part.

---

[8] The Court notes that neither Eisenmann, on the one hand, nor LDM and Plastech, on the other, has moved to reopen the discovery period or otherwise to extend it.

## CONCLUSION

For the reasons stated above, Eisenmann's motion to further amend the operative complaint is respectfully denied. (D.E. 35.) Eisenmann's motion to belatedly amend its answer to the counterclaim is granted in part and denied in part. (D.E. 33.)

Mark Filip
United States District Judge
Northern District of Illinois

Dated: 11/7/06